[Cite as *State v. Strattman*, 2026-Ohio-2863.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO, | : | |
| Appellee, | : | CASE NOS. CA2025-08-066<br>CA2025-08-067 |
| vs. | : | OPINION AND<br>JUDGMENT ENTRY |
| DAZION TERRELL ANTONIO<br>STRATTMAN, | : | 7/27/2026 |
| Appellant. | : | |
| | : | |

CRIMINAL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case Nos. 24CR42129; 25CR42718

David P. Fornshell, Warren County Prosecuting Attorney, and Kirsten A. Brandt, Assistant Prosecuting Attorney, for appellee.

Johnna M. Shia, for appellant.

_____

**O P I N I O N**
_____

**PIPER, J.**

{¶ 1} Appellant, Dazion Strattman, appeals his conviction and sentence in the Warren County Court of Common Pleas following a jury trial. For the reasons set forth below, we affirm in part, reverse in part, and remand to the trial court for further

proceedings.

## I. Factual and Procedural Background

{¶ 2}   On October 20, 2024, Strattman, Jeremy Evans, and Devontrae Williams robbed the Verizon store on Towne Boulevard in Middletown, Ohio. Evans and Strattman entered the store at approximately 4:15 p.m. wearing hoodies, masks, and gloves, while Williams remained in a white sedan as the getaway driver.

{¶ 3}   At that time, store manager Jamarcus Crosby, employee Alex Phifer, other Verizon employees, and customers were present inside. Upon entering, Evans went directly to the door to the inventory room at the back of the store. Strattman approached Crosby on the sales floor and demanded, "Where the phones at?" "We're not here to play," and "Take me to the phones." Evans and Strattman kept their hands in their pockets, leading Crosby and the other store occupants to believe they had guns. Crosby then led Strattman to the inventory room.

{¶ 4}   After Crosby opened the inventory room, Evans began placing phones into a trash bag. Strattman handed another trash bag to Crosby and ordered him to fill it with phones. Unknown to Evans and Strattman, Crosby had activated a panic button when he admitted them into the inventory room and had placed a GPS tracking device disguised as a phone into the bag he was filling. Evans and Strattman then exited through the store's rear door near the inventory room, entered the white sedan, and fled.

{¶ 5}   At the same time that Evans, Strattman, and Crosby were in the inventory room, Phifer directed everyone else in the store outside and called 9-1-1 to report the robbery. Middletown Police Officer Brian Singleton responded to the store at 4:17 p.m., while Phifer remained on the 9-1-1 call. Singleton and another officer checked the store, but the robbers had already left.

{¶ 6} Using security-camera recordings and the tracking device, officers traced the robbers to a Star Wireless store in Green Township, Hamilton County, Ohio. Green Township police responded to the store and found Strattman, Evans, and Williams inside. Strattman was wearing a backpack, and two trash bags containing cell phones were lying on the counter.

{¶ 7} Strattman, Evans, and Williams fled on foot. Officer Tyler Bridwell eventually arrested Strattman, seized his backpack, and quickly checked inside seeing cell phones. Middletown police later obtained a warrant to search the backpack. The search revealed cell phones taken from the Verizon store and other evidence connected to the robbery.

{¶ 8} Strattman was indicted by the Warren County Grand Jury on November 12, 2024 for first-degree felony aggravated robbery, first-degree felony kidnapping, fourth-degree felony theft, and fifth-degree felony possession of criminal tools (Case No. 24CR42129). Strattman entered not guilty pleas and, on March 21, 2025, filed a motion to suppress the evidence discovered in the search of his backpack. The trial court conducted an evidentiary hearing on Strattman's motion to suppress on April 15, 2025. By entry of May 6, 2025, the trial court denied Strattman's motion to suppress.

{¶ 9} Strattman waived his right to a jury trial and the matter proceeded to a joint bench trial involving Strattman, Evans, and Williams on May 12-13, 2025. The trial court found Strattman guilty of second-degree felony robbery, as a lesser included offense of the aggravated robbery charge returned in the indictment, second-degree felony kidnapping as the victim was released in a safe place unharmed, theft as charged, and possession of criminal tools as charged.

{¶ 10} While Strattman's sentencing was pending he was indicted in a separate case with third-degree felony bribery (Case No. 25CR42718). On July 31, 2025,

Strattman entered a guilty plea to the bribery charge. The trial court then proceeded to conduct a sentencing hearing for both the Verizon store robbery and the bribery cases. The trial court merged the theft and robbery convictions and sentenced Strattman to a six- to eight-year prison term for robbery, a consecutive two-year prison term for kidnapping, and a concurrent twelve-month prison term for possession of criminal tools. The trial court sentenced Strattman to a nine-month prison term for the bribery offense, which was ordered to be served consecutively to the prison terms imposed in the Verizon store robbery case.

{¶ 11} Strattman filed a notice of appeal on August 1, 2025. On appeal, he raises six assignments of error for our review.[1]

### II. Legal Analysis

{¶ 12} Assignment of Error No. 1:

{¶ 13} THE COURT ERRED WHEN IT OVERRULED STRATTMAN'S MOTION TO SUPPRESS.

{¶ 14} In his first assignment of error, Strattman asserts the police did not have probable cause to arrest him and search his backpack without a warrant. Strattman contends that Officer Bridwell unlawfully searched his backpack at the time of the arrest because there was no probable cause for the arrest, and the search warrant that was obtained after the fact did not cure the warrantless search because it relied in part upon the stolen cell phones that were observed inside the backpack by Bridwell.

{¶ 15} Appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. *State v. Hentenaar*, 2020-Ohio-4503, ¶ 8 (12th Dist.). The trial

---

1. On April 22, 2026, Strattman filed a motion for leave to supplement his brief with the sixth assignment of error, which this court granted. Strattman filed his supplemental brief on May 20, 2026, and the State filed a supplemental brief in response on June 1, 2026.

court serves as the trier of fact and is therefore best positioned to resolve factual questions and evaluate witness credibility. We must accept the trial court's findings of fact if supported by competent, credible evidence. *Id.* But we independently review the trial court's application of law to those facts, without deference, to determine whether the facts satisfy the applicable legal standard. *Id.*

{¶ 16} "It is well established that searches conducted without a warrant are per se unreasonable, subject to certain 'jealously and carefully drawn' exceptions." *State v. Smith*, 2009-Ohio-6426, ¶ 10, quoting *Jones v. United States*, 357 U.S. 493, 499 (1958). A "search incident to arrest" is a well-established exception to the general rule against warrantless searches that allows arresting officers to search both an arrestee's person and the area within the arrestee's immediate control. *Smith* at ¶ 11, citing *Chimel v. California*, 395 U.S. 752, 762-763 (1969). "The exception derives from interests in officer safety and evidence preservation that are typically implicated in arrest situations." *Arizona v. Gant*, 556 U.S. 332, 338 (2009).

{¶ 17} "To suppress evidence obtained pursuant to a warrantless search or seizure, the defendant must (1) demonstrate the lack of a warrant, and (2) raise the grounds upon which the validity of the search or seizure is challenged in such a manner as to give the prosecutor notice of the basis for the challenge." *Xenia v. Wallace*, 37 Ohio St.3d 216 (1988), paragraph one of the syllabus. "Failure on the part of the defendant to adequately raise the basis of his challenge constitutes a waiver of that issue on appeal." *Id.* at 218. We recognize that in Strattman's original motion to suppress, he only challenged the warrantless search of the backpack and validity of the search warrant obtained after the fact; he did not challenge his warrantless arrest. Strattman has therefore waived any issue with his arrest on appeal. Nevertheless, we find there was

abundant probable cause to arrest Strattman, and the subsequent search incident to arrest was valid.

{¶ 18} The warrantless arrest of an individual in a public place for a felony, or a misdemeanor committed in the officer's presence, is consistent with the Fourth Amendment if the arrest is supported by probable cause. *State v. Gagaris*, 2008-Ohio-5418, ¶ 12 (12th Dist.), citing *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). Probable cause to arrest exists when the officer has sufficient information, derived from his own knowledge or a trustworthy source, which would lead a prudent person to believe the accused committed the offense. *Gagaris* at ¶ 13. When determining whether probable cause to arrest exists, a court reviews the totality of facts and circumstances surrounding the arrest. *Id.*

{¶ 19} Officer Bridwell testified at the suppression hearing about the circumstances leading to Strattman's arrest and the search of his backpack. Bridwell had received a description of two black males who had robbed the Verizon store in Middletown, along with GPS information from the tracking device placed inside one of the bags of stolen merchandise. He followed that GPS information to Star Wireless, a store he described as "shady" that buys and sells cell phones. When he arrived, he saw a white sedan parked outside that matched the description of the suspect vehicle. Although initial reports incorrectly identified the vehicle as a Nissan rather than a Pontiac, officers later confirmed that it was the same vehicle and had the same license plate.

{¶ 20} Inside Star Wireless, Bridwell observed three black males at the counter selling cell phones. He then asked the store manager to speak with him in the back office, told the manager that the Verizon store in Middletown had been robbed, and asked whether the three males at the counter were attempting to sell cell phones. The manager

confirmed that they were.

{¶ 21} While Bridwell was speaking with the manager, the three males began leaving the store. Based on the description of the suspects, the information from the tracking device, the matching vehicle, the attempted sale of cell phones, and the surrounding circumstances, the officers on scene ordered the three black males to stop. They ignored those commands and ran, prompting a foot chase. Bridwell eventually apprehended Strattman, removed the backpack from Strattman's back, unzipped it, and observed cell phones inside.

{¶ 22} We find that Officer Bridwell had probable cause to arrest Strattman based on the totality of the circumstances, and his subsequent search of Strattman's backpack was a lawful search incident to the arrest.

{¶ 23} Strattman's first assignment of error is overruled.

{¶ 24} Assignment of Error No. 2:

{¶ 25} STRATTMAN'S CONVICTION IS NOT SUPPORTED BY SUFFICIENT EVIDENCE NOR THE WEIGHT OF THE EVIDENCE.

{¶ 26} In his second assignment of error, Strattman asserts the State failed to present sufficient evidence to support his convictions and that his convictions were not supported by the manifest weight of the evidence. Specifically, he argues the State was unable to identify him as one of the perpetrators who entered the Verizon store, and the State did not satisfy the statutory elements of kidnapping.

{¶ 27} The standards governing sufficiency and manifest-weight challenges are well settled. A sufficiency inquiry asks "whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d

259, (1991), at paragraph two of the syllabus. In conducting this analysis, an appellate court does not weigh credibility or resolve factual disputes; it asks only whether the State has met a minimum threshold of evidentiary adequacy. We will not disturb the verdict "unless [we] find[] that reasonable minds could not reach the conclusion reached by the trier of facts." *Id*. at 273.

{¶ 28} Manifest weight presents a different question. Here, the appellate court must "'review[] the entire record, weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 1997-Ohio-52, ¶ 25, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.). But the discretionary power to grant a new trial "'should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.'" *Id*., quoting *Martin* at 175.

{¶ 29} In the present case, Williams (Strattman's co-defendant) told Detective Connor Kirby that Strattman was involved in the robbery of the Verizon store. In an apparent attempt to protect Evans, Williams claimed that there were four men involved in the robbery rather than three, with another "light-skinned" black male accompanying Strattman into the store, rather than Evans. Surveillance footage at the Verizon store showed the two perpetrators (later identified as Strattman and Evans) exit the white sedan before the robbery and re-enter the sedan after the robbery to escape. The GPS tracking device placed in the bag of stolen cell phones tracked the location of the suspects in real time to Star Wireless. Surveillance footage at Star Wireless showed Strattman exit the white sedan. After Strattman's arrest, clothing items were recovered from the backseat of the sedan where Strattman was sitting which matched the description of the clothing of

- 8 -

one of the perpetrators; Strattman's DNA was found on the interior mouth and nose area of a Nike face mask and the interior of black gloves recovered from the rear of the sedan. Additionally, stolen merchandise from the Verizon store was discovered in Strattman's backpack.

{¶ 30} Strattman contends that Williams' statement to Detective Kirby was not credible because he was motivated to receive a reduced sentence and that the remaining evidence failed to establish Strattman was one of the two perpetrators who entered the Verizon store. We disagree with Strattman's assessment of the evidence.

{¶ 31} Although we review credibility when considering the manifest weight of the evidence, we are cognizant that determinations regarding the credibility of witnesses and the weight of the testimony are primarily for the original trier of fact. *State v. Hollon*, 2025-Ohio-2725, ¶ 20, (12th Dist.); *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). "'The [trier of fact] is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of proffered testimony.'" *State v. Watson*, 2025-Ohio-883, ¶ 13 (12th Dist.), quoting *State v. Fox*, 2009-Ohio-556, ¶ 18 (12th Dist.). "[I]t [is] within the province of . . . the trier of fact, to take note of any inconsistencies in the testimony and resolve them accordingly, believing all, part, or none of each witness's testimony." *State v. Lark*, 2018-Ohio-4940, ¶ 29 (12th Dist.), citing *State v. Woodard*, 2017-Ohio-6941, ¶ 24 (12th Dist.). "A conviction is not against the manifest weight of the evidence simply because the trier of fact believed the testimony offered by the prosecution." *State v. Baker*, 2020-Ohio-2882, ¶ 31 (12th Dist.). Even if Williams' statements were to be discounted, the remaining evidence clearly establishes Strattman as one of the perpetrators of the robbery and kidnapping.

{¶ 32} As to his kidnapping conviction, Strattman argues that the State failed to

prove he "did, by force, threat, or deception, remove another from the place where he was found or restrain the liberty of him for the purpose of facilitating the commission of a felony or flight thereafter." Strattman contends that Crosby "was not removed from the store, was not restrained in any way and was left unharmed."

{¶ 33} This court previously analyzed this kidnapping in the appeals of Strattman's codefendants and found that the State satisfied the elements of the statute:

> The kidnapping statute, R.C. 2905.01(A)(2), can be satisfied by proof of either removal or restraint, and the record supports both.
>
> As to removal, the evidence is effectively undisputed. Crosby was standing at a table on the sales floor when the two masked men entered the store. Strattman, who appeared to be armed, told Crosby, "we're not here to play," and ordered him to "take me to the phones." Acting under the implicit threat of force, Crosby left his position on the sales floor, walked through a cubby area, a "quote room," and an employee area, then unlocked and entered the inventory room. This is textbook removal under R.C. 2905.01(A)(2): Crosby was moved, by threat, from the place where he was found, to facilitate the commission of a felony. No more is required.
>
> As to restraint, we agree that Crosby's testimony about feeling "free to step out" creates some tension in the record. But this testimony must be weighed against the objective circumstances that the trial court was entitled to assess. Crosby moved to the back of the store at the direction of two men he believed to be armed. Once inside the inventory room, Strattman handed him a trash bag and ordered him to fill it with phones. When Crosby was not putting the right phones in the bag, Strattman "got pissed off" and snatched the bag from him. Throughout this episode, Crosby was separated from the other employees, who had remained on the sales floor, and was alone in a back room with two masked, apparently armed men. A reasonable trier of fact could conclude that, whatever Crosby's subjective belief about his freedom to leave at one particular moment, the totality of the circumstances established that his liberty was in fact restrained by force and threat for the purpose of facilitating the robbery. The victim's momentary subjective impression does not override what the objective evidence reveals about the coercive nature of the encounter.

> In any event, because the statute is satisfied by proof of removal alone, and the evidence of removal is overwhelming, Evans's conviction stands even setting aside the restraint question entirely.

*State v. Evans*, 2026-Ohio-1237, ¶ 31 (12th Dist.)

{¶ 34} This same analysis applies to Strattman's appeal. We find Strattman's conviction for kidnapping, along with his other convictions, were supported by sufficient evidence and by the manifest weight of the evidence.

{¶ 35} Strattman's second assignment of error is overruled.

{¶ 36} Assignment of Error No. 3:

{¶ 37} THE PRC ADVISEMENT IN CASE NUMBER 25CR42718 WAS CONTRARY TO LAW.

{¶ 38} In his third assignment of error, Strattman argues the trial court did not substantially comply with Crim.R. 11 when it accepted his guilty plea to bribery. Strattman contends he did not knowingly and voluntarily plead guilty because the trial judge did not inform him whether postrelease control would be discretionary or mandatory and did not inform him of the duration of postrelease control.

{¶ 39} As pertinent here, Crim.R. 11(C)(2)(a) provides that a trial court shall not accept a guilty plea in a felony case without personally addressing the defendant and "[d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved." Whether mandatory or discretionary, postrelease control is an additional penalty for the offense that the defendant must consider in determining whether to waive his constitutional rights and enter a guilty plea. *State v. Tipton*, 2021-Ohio-1128, ¶ 23 (12th Dist.).

{¶ 40} Here, the trial court advised Strattman that his offense "carries post-release

control, which is a supervision by adult parole authority. If you violate the terms of post-release control, the adult parole authority can send you back to prison for nine months per violation up to a total of one half your stated sentence." Although the trial court addressed postrelease control, it did not state whether it was mandatory or discretionary, and did not state its duration.

{¶ 41} In *State v. Dangler*, 2020-Ohio-2765, the Ohio Supreme Court addressed a trial court's compliance with Crim.R. 11(C) and how best to review a trial court's plea colloquy to ensure that a defendant's plea is knowingly and voluntarily entered. As a general matter, "a defendant is not entitled to have his plea vacated unless he demonstrates he was prejudiced by a failure of the trial court to comply with the provisions of Crim.R. 11(C)," i.e., that "the plea would not have otherwise been made." *Dangler* at ¶ 16. There are, however, two exceptions to this rule: (1) when the trial court "fails to explain the constitutional rights [set forth in Crim.R. 11(C)(2)(c)] that a defendant waives by pleading guilty or no contest," and (2) "a trial court's *complete* failure to comply with a portion of Crim.R. 11(C)." (Emphasis in original.) *Id*. at ¶ 15. Under either exception, the defendant is not required to show prejudice.

{¶ 42} This court has previously applied *Dangler* to find that a trial court's failure to advise an appellant of the "duration and nature of the postrelease control to which he would be subject . . . is not the type of failure that excuses appellant from demonstrating prejudice." *Tipton* at ¶ 15. The trial court's mention of postrelease control during the colloquy, "albeit incomplete or perhaps inaccurate, does not constitute a complete failure to comply with Crim.R. 11(C)(2)(a)." *State v. Fabian*, 2020-Ohio-3926, ¶ 20 (12th Dist.). Therefore, to have his plea vacated, Strattman must demonstrate that he was prejudiced by the trial court's incomplete advisements and he would not have otherwise made the

plea. He has not done so.

{¶ 43} Strattman's bribery offense carried a maximum prison term of 36 months. In exchange for his plea, the State agreed to recommend a 12-month sentence, consecutive to the sentence in Strattman's other case. The record reveals no hesitation on Strattman's part in accepting this favorable plea deal. Further, he did not raise any objection to the court's imposition of postrelease control at sentencing. Therefore, we find his guilty plea was entered knowingly and voluntarily.

{¶ 44} Strattman's third assignment of error is overruled.

{¶ 45} Assignment of Error No. 4:

{¶ 46} THE TRIAL COURT COMMITTED A PLAIN ERROR WHEN IT FAILED TO NOTIFY STRATTMAN OF THE REBUTTABLE PRESUMPTION AND PROCESS PRIOR TO SENTENCING.

{¶ 47} In his fourth assignment of error, Strattman argues the trial court failed to comply with the notification requirements of R.C. 2903.42(A)(1) when classifying him as a violent offender prior to sentencing.

{¶ 48} Strattman was convicted of kidnapping in violation of R.C. 2905.01(A)(2). Thus, pursuant to R.C. 2903.41(A)(1)(a), Strattman is considered a "violent offender." Accordingly, the trial court was required to provide the advisements set forth in R.C. 2903.42(A)(1)(a) — the presumption established under this division, the offender's right to file a motion to rebut the presumption, the procedure and criteria for rebutting the presumption, and the effect of a rebuttal and the post-rebuttal hearing procedures and possible outcome — before sentencing. The record reflects that the trial court failed to do so prior to sentencing Strattman.

{¶ 49} "R.C. 2903.42(A)(3) further provides that when an offender, such as

Strattman, has not filed a motion to rebut the presumption, 'the trial court must provide to the offender, at sentencing, notice of his or her duties under Sierah's Law.'" *State v. Baker*, 2021-Ohio-4544, ¶ 34 (12th Dist.), quoting State *v. Wright*, 2021-Ohio-4107 at ¶ 34 (2d Dist.). Specifically, the trial court must

> require the violent offender to read and sign a form stating that the violent offender has received and understands the notice. If the violent offender is unable to read, the judge . . . shall inform the violent offender of the violent offender's duties as set forth in the notice and shall certify on the form that the judge . . . informed the violent offender of the violent offender's duties and that the violent offender indicated an understanding of those duties.

R.C. 2903.42(C).

{¶ 50} This court has previously recognized that R.C. 2903.42(A)(1) advisements are mandatory and must be provided "before sentencing," and the trial court lacks authority to proceed with sentencing until these advisements are given. *State v. Delehanty*, 2023-Ohio-337, ¶ 94 (12th Dist.); *Baker* at ¶ 21-22. In those cases we vacated the defendant's sentence and remanded the matter for the purposes of complying with the mandatory advisements of R.C. 2903.42(A)(1) and for resentencing. We do the same here.

{¶ 51} We sustain Strattman's fourth assignment of error, vacate his sentence in Case No. 24CR42129, and remand to the trial court for purposes of complying with the mandatory advisements of R.C. 2903.42(A)(1) and for a new sentencing hearing.[2]

---

2. We note a new sentencing hearing will require that Strattman be resentenced for each of his offenses in Case No. 24CR42129, however his sentence for bribery remains in place as it stems from a separate case, Case No. 25CR42718, and is not a violent offender offense.

{¶ 52} Assignment of Error No. 5:

{¶ 53} THE IMPOSITION OF CONSECUTIVE SENTENCES WAS CONTRARY TO LAW AND NOT SUPPORTED BY THE RECORD.

{¶ 54} Assignment of Error No. 6:

{¶ 55} THE COURT ERRED WHEN IT FAILED TO MERGE THE KIDNAPPING AND ROBBERY OFFENSES.

{¶ 56} In his fifth and sixth assignments of error, Strattman challenges his sentences for his kidnapping and robbery offenses, arguing that the consecutive sentences he received were not supported by the record and that these offenses should have merged. The State has conceded that these offenses should have merged in Strattman's case as this court previously examined this same legal issue and identical fact pattern in the appeals of Strattman's codefendants and determined that their robbery and kidnapping offenses should have merged. *See State v. Evans*, 2026-Ohio-1237 (12th Dist.). Nevertheless, as discussed above, we have vacated Strattman's sentence in Case No. 24CR42129 and remanded for resentencing, and therefore Strattman's fifth and sixth assignments of error are rendered moot and need not be considered.

## III. Conclusion

{¶ 57} We have overruled Strattman's first, second, and third assignments of error; sustained his fourth assignment of error; and found his fifth and sixth assignments of error moot. The judgment of the trial court is affirmed as to the underlying convictions, but reversed as to sentencing in Case No. 24CR42129. These cases are remanded to the trial court for resentencing consistent with this opinion.

HENDRICKSON, P.J., and M. POWELL, J., concur.

## JUDGMENT ENTRY

The assignments of error properly before this court having been ruled upon, it is the order of this court that the judgment or final order appealed from be, and the same hereby is, reversed as to sentencing only in Case No. 24CR42129 and remanded for the limited purpose of resentencing according to law and consistent with the above Opinion. In all other respects, the judgment of the trial court is affirmed.

It is further ordered that a mandate be sent to the Warren County Court of Common Pleas for execution upon this judgment and that a certified copy of this Opinion and Judgment Entry shall constitute the mandate pursuant to App.R. 27.

Costs to be taxed 75 % to appellant and 25 % to appellee.

*/s/ Robert A. Hendrickson, Presiding Judge*

*/s/ Robin N. Piper, Judge*

*/s/ Mike Powell, Judge*